UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATRICE NELSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MACY'S RETAIL HOLDINGS, LLC,<br><br>    Defendant. | Case No. 3:25-cv-05541-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 21 |

Plaintiff, a former Macy's employee, brings this wage and hour class action on behalf of "fulfillment associates" who "handled, picked, packed, or processed packages or goods as part of international and/or interstate commerce" for Macy's in California. (Dkt. No. 1-1 at 7-8.) While the action was initially filed in the Contra Costa Superior Court, Macy's removed the action to this court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1453(b). Macy's now moves to compel arbitration in accordance with an arbitration provision incorporated into Macy's new hire paperwork and to dismiss Plaintiff's putative class claims. (Dkt. No. 21.[1]) Having considered the parties' briefs and having had the benefit of oral argument on November 20, 2025, the Court is inclined to DENY the motion to compel arbitration and the motion to dismiss Plaintiff's class claims, but before doing so will allow certain discovery, if necessary.

**DISCUSSION**

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. (cleaned up).  Here, neither gateway issue is in dispute; instead, the dispute is whether Plaintiff is an exempt transportation employee under Section 1 of the FAA such that the FAA does not apply.

### A.     FAA Section 1 Exemption

Section 1 of the FAA creates an exemption to the FAA's general rule of applicability for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. So, "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). However, "[a] transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by § 1 of the Act." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024).

To determine whether the exemption applies to a specific class of workers involves a two-step analysis. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455-56 (2022).  First, the Court must "defin[e] the relevant 'class of workers' to which [Plaintiff] belongs." *Id*. at 456.  In so doing, the Court considers "the actual work that the members of the class, as a whole, typically carry out ... not what [the employer] does generally." *Id*. Next, the Court determines whether that "class of workers [is] directly involved in transporting goods across state or international borders." *Id.* at 457.  To be "directly involved" in interstate commerce and fall within Section 1's exemption, the class of workers "'must at least play a direct and necessary role in the free flow of goods across borders.'" *Bissonnette*, 601 U.S. at 256 (quoting *Saxon*, 596 U.S. at 458 (quoting *Circuit City*, 532 U.S. at 121)). "As the party opposing arbitration, plaintiff[] bear[s] the burden of establishing that the exemption applies." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190,

1194 (9th Cir. 2024).

### 1. Step 1: Defining the Class of Workers

At the first step, Plaintiff insists she belongs to a class of workers who "handled and processed customer orders for shipment or delivery." (Dkt. No. 22 at 9.) It does not appear Macy's disputes this definition as it agrees "Fulfillment colleagues [such as Plaintiff] typically pick merchandise from Macy's store inventory and pack that merchandise for customer orders." (Dkt. No. 26 at 7.) Plaintiff's definition is also consistent with the job description for a Macy's Retail Fulfillment Associate which states the duties include (1) providing excellent customer service, (2) selecting merchandise from the selling floor and packing it for delivery as well as processing returns, (3) retrieving items from the "back-of-house storage" and delivering them curbside to customers, and (4) assisting other teams as needed with tasks such as "unloading and processing new merchandise." (Dkt. No. 23-1 at 2.[2]) *See also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1161 (9th Cir.), cert. denied, 145 S. Ct. 165 (2024) (defining the class of workers by reference to the plaintiff's job description).

### 2. Step 2: Engagement in Foreign or Interstate Commerce

A class of workers is "directly involved" in interstate commerce and thus falls under Section 1's exemption if the workers "'at least play a direct and necessary role in the free flow of goods across borders.'" *Bissonnette*, 601 U.S. at 256 (quoting *Saxon*, 596 U.S. at 458). To satisfy this requirement, workers do not need to physically transport goods across borders. *Saxon*, 596 U.S. at 458. However, the worker must play "a tangible and meaningful role" in the progress of goods "through the channels of interstate commerce." *Ortiz*, 95 F.4th at 1159-60.

The online orders for which Plaintiff picked and packed merchandise fell into three

---

[2] Plaintiff requests the Court take judicial notice of a Macy's Career listing for a "Retail Fulfillment Associate, Santa Ana Mainplace -Flex," posted on Macy's official website. (Dkt. No. 23, Ex A.) Judicial notice permits courts to notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201). Because courts routinely take judicial notice of websites, *see Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020), and Defendant does not object or dispute the accuracy of the job description, the Court takes judicial notice of Exhibit A.

3

categories: (1) online orders shipped from the Macy's store via United Parcel Service or the postal service, (2) online orders picked up by customers in person, and (3) online orders delivered to local customers by DoorDash. (Dkt. No. 21-14, Diaz Decl. at ¶ 7.)   Plaintiff attests:

> As part of my job duties, I retrieved (or "picked") items from the shelves for customer orders placed online, located and collected merchandise from the sales floor, packed customer orders for shipment, printed shipping labels, and placed the completed packages at the store's internal pickup location for carriers such as FedEx and UPS to process the orders for shipment. I recall that many of the shipping labels I printed and applied to the packages I processed for shipping were being shipped to locations outside of California.

(Dkt. No. 25, Nelson Decl. at ¶¶ 3-4.)  Macy's own evidence indicates 50 percent of the labels Plaintiff prepared (during the period for which Macy's has data) were for addresses outside of California. (Dkt. No. 21-15, Walker Decl. at ¶ 5.)

In light of this undisputed record, Plaintiff has met her burden of showing she is part of a class of workers that played "a tangible and meaningful role" in progressing goods "through the channels of interstate commerce."  Because a fulfillment associate prepares goods and merchandise for in-state delivery or pick up, but also for shipment out-of-state, Plaintiff "ensured that goods would reach their final destination" by collecting and packing merchandise for shipping, as well as preparing the shipping labels and placing them for pickup. *Ortiz*, 95 F.4th at 1162. Without fulfillment associates, Macy's merchandise would not complete their interstate journey.

*Ortiz* is controlling.  There the Ninth Circuit considered whether a warehouse employee whose duties involved "transporting packages to and from storage racks, helping other employees in obtaining packages so they could be shipped, and assisting the Outflow Department to prepare packages for their subsequent shipment" was engaged in interstate commerce. *Ortiz*, 95 F.4th at 1161.  Like Plaintiff, "[Ortiz] was not involved in unloading shipping containers upon their arrival or loading them into trucks when they left the warehouse." *Id*.  But because Ortiz's work involved handling "Adidas products near the very heart of their supply chain" "as they went through the process of entering, temporarily occupying, and subsequently leaving the warehouse" the court concluded he was "actively engaged in the interstate commerce of goods." *Id*. at 1162 ("the

relevant goods were still moving in interstate commerce when the employee interacted with them, and each employee played a necessary part in facilitating their continued movement."). Here, Plaintiff picked merchandise from Macy's floor or back storage and then prepared that merchandise for delivery, customer pick up, or shipping; so, her work involved handling Macy's merchandise "near the very heart of the supply chain" "as [the merchandise] went through the process of entering, temporarily occupying, and subsequently leaving" the Macy's store. *Id.* Thus, like the plaintiff in *Ortiz,* Plaintiff here was "actively engaged in the interstate commerce of goods." *Id.*

Macy's fails to materially distinguish *Ortiz*. First, Macy's emphasizes that fulfillment associates, such as Plaintiff, "perform a purely store-based function: they pick and pack merchandise at Macy's stores." And, they are "not involved in loading or unloading vehicles." (Dkt. No. 26 at 9.) But the *Ortiz* plaintiff performed a purely warehouse-based function and was not involved in loading or unloading vehicles. 95 F.4th at 1161 (Ortiz performed an "exclusively warehouse" function and "Ortiz was not involved in unloading shipping containers upon their arrival or loading them into trucks when they left the warehouse"). As *Ortiz* held, the employers' view that "because Ortiz performed his duties on an entirely intrastate basis, his role did not relate to interstate transportation in any meaningful sense" was "incorrect." *Id.* at 1162.

Next, Macy's insists its merchandise was not "temporarily paused" at the Macy's store, as were the goods in *Ortiz*; rather, merchandise delivered to "a company's intrastate location for future sale to customers yet to be identified lose their interstate character once they arrive at the intrastate location." (Dkt. No. 26 at 9-10 ("The merchandise is not destined for any predetermined end customer and is not inevitably bound for any other specific destination").) In other words, once the merchandise arrives at the Macy's store it is at the end of the stream of interstate commerce, and then it sits in the store until a customer is identified—either through an in-store purchase or an online order. But the *Ortiz* defendant made that exact argument to the Ninth Circuit. It argued Ortiz was "not part of a single unbroken stream of commerce" and that the plaintiff had no proof otherwise; in other words, that there was no evidence the goods stored at the Adidas warehouse already had a final destination. The *Ortiz* defendant emphasized "the

5

unrebutted evidence shows that the third-party product would remain at the [warehouse] *for several days, and often weeks.*" Appellants' Consolidated Reply Brief at 14-15, *Ortiz v. Randstat Inhouse Services, LLC*, Nos. 23-55147, 23-55149 (9th Cir. Sept. 20, 2023). The Ninth Circuit agreed: "Products remain at the warehouse for anywhere from several days to a few weeks, after which they are shipped to end-use customers and retailers in a variety of states." 95 F.4th at 1157. And, the defendant "receives and stores Adidas products after they arrive from international suppliers, then processes and prepares them for further distribution across state lines." *Id.* Although there was no evidence the end-use customers or retailers to whom the shoes were shipped were identified before the shoes reached the California warehouse,[3] the Ninth Circuit held Ortiz fell within the section 1 FAA exemption. The court reasoned:

> Though Ortiz moved goods only a short distance across the warehouse floor and onto and off of storage racks, he nevertheless moved them. And not only did he move them, he did so with the direct purpose of facilitating their continued travel through an interstate supply chain. Without employees like Ortiz, Adidas products that arrived at GXO's warehouse would not be properly processed, organized, stored, or prepared for the next leg of their interstate journey. Indeed, as GXO itself readily admits, although its employees do not actively transport Adidas products themselves, its warehouses act as intermediary "warehouse and distribution facilities" where products are "receive[d]," "store[d]," and "processe[d]" for further "distribution to businesses or end consumers" in other states. That process—and Ortiz's undisputed role in directly facilitating it—is a necessary step in an unbroken foreign and interstate supply chain for Adidas products.

*Id.* at 1163; *see also Carmona Mendoza* v. *Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023) (holding drivers who transport pizza ingredients from a supply chain center to pizza franchisees were engaged in interstate commerce because the goods they transported were "inevitably destined from the outset of" their journey to customers located across state lines even though end customers for the ingredients were not known at the time they arrived at the warehouse).

Similarly, here, Plaintiff picks and packages merchandise "with the direct purpose of

---

[3] Indeed, the evidence was to the contrary as the defendant characterized the California warehouse as the "origin location." *Ortiz v. Randstad Inhouse Services*, No. 22-cv-01399 TJH, Dkt. No. 31-1, Estrada Decl. ¶ 5 (C.D. Cal. Oct. 24, 2022).

6

facilitating their continued travel through an interstate supply chain." *Ortiz*, 95 F.4th at 1163. Without fulfillment associates like Plaintiff, Macy's merchandise stored—on the floor or in a storage room—at the Macy's store "would not be properly processed . . . or prepared for the next leg of their interstate journey." *Id.* So, although Plaintiff does not actively transport Macy's merchandise herself, the Macy's store acts as an "intermediary 'warehouse and distribution facility[y]' where products are 'receive[d],' 'store[d],' and 'processe[d]' for further 'distribution to . . . end consumers' in other states." *Id.*

Defendant also emphasizes that unlike *Ortiz*, the Macy's store is not a warehouse, it is a retail store; some goods shipped to the store are purchased directly by consumers in person. But Plaintiff is not a floor salesperson; her role is limited to locating inventory and preparing it for delivery, pick up, or shipment. That Macy's chooses to use its retail store also as a warehouse of sorts for online orders does not meaningfully distinguish the facts of this case from *Ortiz*. Nor does that fact that not all of the packages Plaintiff prepares are for interstate shipment defeat finding she falls within the section 1 exemption. While not squarely addressed in *Ortiz*, given the warehouse was located in California, 95 F.4th at 1157, common sense dictates that some of the shoes must have been picked up from the warehouse for intrastate delivery in California. And, indeed, Ortiz submitted a declaration in which he attests "[i]t was typical for the packages to be sent to states outside California." *Ortiz v. Randstad Inhouse Services*, No. 22-cv-01399 TJH, Dkt. No. 24-2, Ortiz Decl. ¶ 5 (C.D. Cal. Sept. 22, 2022).

Finally, Macy's also argues the merchandise delivered to the Macy's store came from a California warehouse and Plaintiff does not have any competent evidence the merchandise in the California warehouse came from out-of-state. (Dkt. No. 26 at 9.) Plaintiff attests she handled brands "such as Versace, Dolce & Gabbana, Ralph Lauren, Adidas, and Calvin Klein" and that her understanding is that these brands are typically manufactured overseas. (Dkt. No. 25, Nelson Decl. at ¶ 4.) Macy's does not offer any evidence disputing her understanding. But, if Macy's wishes to challenge Plaintiff's assertion the merchandise delivered to the Hayward warehouse originated out-of-state, then the Court will allow Plaintiff to take a 30(b)(6) deposition of Macy's before finally resolving the motion to compel.

7

***

The Ninth Circuit concluded in *Ortiz*:

> At bottom, the employers cannot overcome the fact that § 1 "directs the interpreter's attention to the performance of work." When, as *Saxon* commands, we consider the nature of the work performed by Ortiz's class of employees, we conclude that his role is "direct and necessary" to, "actively engaged in," and "intimately involved with" the interstate commerce of Adidas products.

95 F.4th at 1165–66. The same is true here. Given the nature of the work Plaintiff performed, her role was "direct and necessary" to, "actively engaged in," and intimately involved with" the interstate commerce of Macy's merchandise. As the section 1 FAA exemption applies, Macy's motion to compel arbitration pursuant to the FAA must be denied.

**B.  Class Action Waiver**

Macy's also moves for dismissal of Plaintiff's putative class claims based on the class action waiver in the Arbitration Agreement. The Agreement states:

> The Arbitrator shall not consolidate claims of different employees into one (1) proceeding and with respect to any claim, shall not issue relief on behalf of a group of employees. The Arbitrator shall not hear an arbitration as a class, collective or other representative action. (A class or collective action involves representative members of a large group of individuals who claim to share a common interest and who seek relief on behalf of the group. A representative action is similar to a class or collective action and includes an action brought by representatives of a large group of individuals, such as representatives acting as private attorneys general, and who seek relief on behalf of the group or the general public.)

(Dkt. No. 21-3 at 32.) Macy's argues the waiver is enforceable under the FAA. (Dkt. No. 21 at 21-22.) However, as the Court has concluded the FAA does not apply and Macy's has explicitly stated it does not seek to compel arbitration under the California Arbitration Act, the class action waiver is moot. (Dkt. No. 26 at 14 ("If the Court does not compel arbitration under the FAA, Macy's motion should be denied because neither party asked for enforcement under the CAA.").) Macy's does not argue the waiver precludes Plaintiff from bringing her putative class claims in federal court—just in arbitration. (Dkt. No. 21 at 21-22.) Nor would there be any basis for such an argument as the clause is cabined to the types of claims the arbitrator may hear. (Dkt. No. 21-3 at 32 ("The *Arbitrator* shall not hear an arbitration as a class, collective or other representative

8

action.") (emphasis added).)  *See Parker v. OnTrac Logistics, Inc.*, No. 2:25-CV-03894-JLS-RAO, 2025 WL 2632397, at *4 (C.D. Cal. Aug. 8, 2025) (finding the plaintiff fell within the FAA's transportation worker exemption and denying request to enforce class action waiver and dismiss class claims because the class action waiver was limited to claims in arbitration).

Accordingly, Macy's motion to dismiss Plaintiff's class claims is denied.

## CONCLUSION

For the reasons stated above, the Court is inclined to deny Macy's motion to compel arbitration based on the FAA section 1 exemption.  But, if Macy's contends the merchandise shipped to the Hayward distribution facility did not originate out-of-state, then Plaintiff must be allowed a 30(b)(6) deposition of Macy's given her description of the goods she packaged and processed at the Macy's store.  On or before December 17, 2025, Macy's shall advise the Court whether it maintains the merchandise delivered to the Hayward warehouse did not originate out-of-state.

The Court sets an initial case management conference for February 4, 2026 at 2:00 p.m. via Zoom videoconference.  An updated case management conference statement is due one week in advance of the conference.

**IT IS SO ORDERED.**

Dated: December 9, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

9